Roger FRIEDMAN, Plaintiff,

v.

**FEDERAL BUREAU OF INVESTIGATION, et al.,**
Defendants.

Civ. A. No. C78–309A.

United States District Court,
N.D. Georgia,
Atlanta Division.

Oct. 6, 1981.

Supplemental Order of Court
Oct. 5, 1984.

ORDER OF COURT

HORACE T. WARD, District Judge.

This action is brought pursuant to the Freedom of Information Act against the Federal Bureau of Investigation and the Justice Department as a whole. Jurisdiction in this court is founded on 5 U.S.C. § 552(a)(4)(B). Plaintiff first sought the release of information from defendants by letter dated August 31, 1977.[1] Also in 1977, plaintiff mailed requests to the San Francisco, New York, Atlanta, and Boston field offices of the FBI pursuant to then regulations establishing field offices as separate record systems. On January 28, 1978, plaintiff mailed an FOIA request to the Department of Justice's Office of Management and Finance, and was advised of an indefinite delay due to need of consultation with the FBI. At the time of the filing of the complaint on February 24, 1978, plaintiff had received no documents. By Order dated May 3, 1978, Judge O'Kelley denied as premature plaintiff's *Vaughn v. Rosen (I)*, 484 F.2d 820 (D.C.Cir.1973) *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974) motion for itemization of withheld records. On April 11, 1978, the FBI delivered some of the documents requested by plaintiff. By Order dated September 6, 1978, Judge O'Kelley granted plaintiff's *Vaughn* motion as to the FBI so that plaintiff would have sufficient information with which to challenge FBI claims of exemption. The itemization was filed on October 6, 1978, in the form of an Affidavit and as an answer to an interrogatory.

As a threshold matter, the court must clarify the materials encompassed within the plaintiff's action. Plaintiff contends that the scope of his action includes re-

Roger Friedman, pro se.

Myles Eastwood, Asst. U.S. Atty., Atlanta, Ga., for defendants.

1. The request read in pertinent part, as follows:

This is a request under the Freedom of Information Act as amended (5 U.S.C. § 552).

I write to request a copy of any reports or files which you may have on me or my activities. In connection with this request, I request that you check, in addition to files on me personally, the files of the following organizations with which I have been associated, by which I have been employed, or with whom I have had contact: Extra! (Providence, Rhode Island); Great Speckled Bird, Atlanta Cooperative News Project (Atlanta, Georgia); National Lawyers Guild (New York City and Atlanta); Georgia Power Project (Atlanta); National Jury Project (New York City and Atlanta); Pacific Counseling Service (San Francisco, California). I hereby provide you with the following identification information solely for use in this request: Social security number 215–46–0927; date of birth, 1–4–46; selective service number 18–54–46–9. A verification of my signature is given below. (Exhibit "A")

quests sent to the field offices in 1977, and to the following field offices in May of 1978: Atlanta, Savannah, Baltimore, Charlotte, N.C., Detroit, Jackson, Miss., and Columbia, S.C. Plaintiff's 1978 request makes specific reference to records compiled on the Mt. Beulah conference of Southeastern Underground Newspapers held in October, 1970, and the Ann Arbor Conference held in July, 1979. Materials located by the Jackson office have been withheld pursuant to the national security exemption of the FOIA, and documents at the Charlotte office have been destroyed. Plaintiff's position regarding the scope of the action led him to include in his motion for summary judgment, certain "Undisputed Material Facts." The facts refer to inadequate or unjustified government processing of the request on the Mt. Beulah Conference and illegal destruction of documents in Charlotte. Plaintiff also seeks court orders to produce all records requested.[2] However, it cannot be disputed that the complaint dealt only with the Washington and Boston FOIA requests. The defendants contend that those requests are the only ones material to this lawsuit. Defendants have structured their response to the motion for summary judgment, their cross-motion for summary judgment, and their statement of material facts in support of their motion, in line with that contention. The court will not comment on the merits of defendants' or plaintiff's arguments regarding Local Rule 91.72. Technical discussions of Local Rules are inappropriate in the face of the necessity to clarify the proper scope of this action.

Plaintiff relies on the September 6, 1978 Order of Judge O'Kelley to justify including field office requests within this action. Judge O'Kelley ruled that plaintiff's *Vaughn v. Rosen* motion, originally filed on February 27, 1978 and denied as premature, should be granted as to the FBI so that plaintiff would have sufficient information with which to challenge claims of exemption. Judge O'Kelley also ruled that the plaintiff was deemed to have exhausted administrative appeals due to delay by other divisions of the Department of Justice. Therefore, the motion of defendants to stay proceedings was denied, and plaintiff's motion to compel was granted. Defendants' answers to plaintiff's interrogatories were filed on October 6, 1978. The court does not read Judge O'Kelley's ruling to enlarge the scope of the action beyond those requests considered in the complaint and original *Vaughn* motion. Accordingly, disputes specifically concerning documents outside this action will not be addressed. Thus, the court rules that the standards for determining whether the FOIA has been complied with should be applied to the Washington and Boston requests only. All the Boston documents are covered by the FBI national office release, but some material has been withheld in reliance on FOIA exemptions.

## I. *FBI Compliance with Plaintiff's Request under the FOIA*

The FBI maintains index cards in two general categories. "Main" cards bear the name of an individual, organization, activity or the like, which is the main subject of

**2.** Plaintiff seeks from this court the following rulings:

(1) an order that requires the FBI to process fully his FOIA request for all files concerning plaintiff or his activities, including but not limited to the disclosure of the files specifically listed by plaintiff;

(2) a declaratory judgment that defendant's policy regarding responses to requests violate the FOIA;

(3) an order that requires the FBI to provide an index of all files examined and justifications for withholding;

(4) an order that requires production of particular files;

(5) an order that requires production of files for which the FBI has failed to establish requisite law enforcement purposes under the 5 U.S. C.A. § 552(b)(7) exemption;

(6) an order that the FBI disclose the names of commercial credit bureaus who were requested to provide information to the FBI;

(7) an order enjoining the FBI from destroying documents and requiring the agents and employees of the Charlotte, South Carolina FBI office to set forth reasons why records relating to plaintiff were destroyed after his FOIA request was submitted.

a file in the system. A "see" card bears the name of an individual, organization, activity or the like, which has been cross-referenced with the "main" card's subject. The second King Affidavit, as amended, established that the "see" cards refer a reader to all documents in which a subject is indexed. The FBI indexes names and information considered relevant for future retrieval. The affidavit states that " 'see' references contain insufficient information by which a positive identification can be made with a given name ... receipt of additional information can assist in making positive identification or in locating the file in which the requested information is maintained." Apparently, the relationship between the request and the file appearing on the "see" card is not alone always enough to tell the FBI what part of the "see" file is requested or should be revealed.

In the case at bar, plaintiff requested information on himself "and his activities," and he listed files which he requested to be searched. The search was conducted by locating those files which appeared on "main" and "see" cards. Plaintiff argues that this search was not responsive to the request. The FOIA requires production of all records "reasonably described by the request." 5 U.S.C. § 552(a)(3). The defendants describe the request as one seeking "all documents on himself." Such a description acts to justify the scope of the search, but it is not helpful in dealing with the plaintiff's argument. The request clearly seeks access to materials on FBI investigations of political activities with which he was affiliated. The problem occurs because personal involvement in any given activity may, or may not, result in a "see" card. Thus, undisputed facts pose the following legal question: Is the FBI fulfilling its duties under the FOIA by searching only the "main" and "see" cards

when the plaintiff includes a request for materials about investigations of specified activities in which he was involved?

A similar question has been addressed by the District Court of Massachusetts. *Stern v. United States*, No. 77–3812–C (D.Mass. August 25, 1980). The plaintiff requested that the FBI provide him with any documents in the FBI's possession which referred to plaintiff or any of his alleged activities. He also listed several organizations with which he was involved, such as the National Lawyers Guild. The plaintiff claimed that a search of the indices is incomplete if limited to the FBI's "main" and "see" cards. However, the court ruled that FOIA responsibilities are satisfied by a search of its general indices. The court reasoned that it is in the best interests of the FBI to index all references which it might need•to retrieve in the future. Further, that interest acts as a safeguard against any danger that the FBI might narrow the scope of its indices in an effort to narrow the application of the FOIA to its agency.

▮ This court agrees with the reasoning of the District Court of Massachusetts. Accordingly, the FBI's "main" and "see" search policy comports with FOIA responsibilities when a request seeks materials pertaining to an individual and his activities.[3] However, plaintiff in the instant case appears to argue that the scope of his request is not restricted to information "pertaining to" himself. He appears to contend that the request seeks materials about investigative material on organizations and activities beyond those referring to his own personal involvement. If this was the case, then a search limited to "main" and "see" materials would not be fully responsive to the request. However, the demand for ma-

---

**3.** The court is aware of the slow trickle of releases from defendants, the judicial intervention required, and the burden of administrative persistence on the plaintiff. However, those facts cannot form the basis of a ruling that the FBI's "main" and "see" search policy does not comport with FOIA requirements. It should be noted that the plaintiff did receive items from the

Great Speckled Bird file (see par. 12 of Second King Affidavit), materials involving his activities with the Pacific Counseling Service (see Document 10 of Second King Affidavit), and documents on his activities with the Atlanta Cooperative New Project (see Document 2 of Second King Affidavit).

terials which do not focus on personal involvement seeks matter not "reasonably described" by the request. 5 U.S.C. § 552(a)(3). The FBI construed the request to be one seeking information "pertaining to the subject" of materials. The agency thus technically avoids the mandate of 28 C.F.R. § 16.3(d)(2) (1980), giving the requester an opportunity to confer with personnel to reformulate a request which was denied on grounds that it did not reasonably describe records sought. Since the request is at best ambiguous, the court does not find that defendant failed to make a "good faith attempt to assist the requester." *See Ferri v. Bell*, 645 F.2d 1213 (3rd Cir.1981).

## II. *Exemptions*

Only a portion of the documents returned by the "see" reference cards were released to plaintiff. The FBI first consulted its "main" index which indicated a file on plaintiff under "Security Matter-New Left." There were eight references on a "see" card, and defendants processed the referenced material "pertaining to" plaintiff. Second King Affidavit, ¶ 12. Withholding was based on FOIA exemptions (b)(7)(C) and (b)(7)(D). Under 5 U.S.C. § 552(b), agency records are exempt from disclosure if they are:

> (7) investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would ...
> (C) constitute an unwarranted invasion of personal privacy, (D) disclose the identity of a confidential source.

The threshold question for both exemptions is whether the records were compiled for "law enforcement purposes." Defendants contend that these records fall within the language because they were compiled (1) to investigate acts which are illegal and can result in criminal or civil sanctions, (2) to ascertain the identity and actions of those committing the acts, and (3) to ascertain the identity and actions of those aiding and abetting, or conspiring with, such actors. *Rural Housing Alliance v. Department of Agriculture*, 498 F.2d 73 (D.C.Cir.1974). Plaintiff agrees that records compiled in connection with an investigation of an armed robbery in South Carolina, in which a car registered in plaintiff's name was used by men associated with the Black Panther Party, do fall within "law enforcement purposes." However, plaintiff contends that the records which are unrelated to the robbery investigation were not compiled for "law enforcement purposes." Specifically, plaintiff contends that the records represent unlawful monitoring of activities protected by the First Amendment. Defendants contend that those records were compiled through investigations of actual or possible violations of one or more of the following or related statutes: 18 U.S.C. § 2383 (Rebellion or Insurrection); 18 U.S.C. § 2384 (Seditious Conspiracy); 18 U.S.C. § 2385 (Advocating the Overthrow of the Government); 18 U.S.C. § 2387 (Sedition). Second Affidavit of King. ¶ 12(E), p. 6.

The defendant carries the burden of proof of establishing that exemptions are proper, and the district court's ruling on a claim of exemption must not rely solely upon an affidavit to determine factual basis and bona fides. *See Irons v. Bell*, 596 F.2d 468 (1st Cir.1979). The defendants maintain that investigations of plaintiff as well as other persons did involve looking into whether there was planning for an armed uprising against the government. By reviewing the excised documents, defendants contend that the court can find that a law enforcement purpose was the basis for their compilation. That procedure has been approved in *Kuehnert v. F.B.I.*, 620 F.2d 662, 666–667 (8th Cir. 1980). Several documents in which plaintiff or others are the subject, support the defendants' contention that these were investigations of possible plans for taking up arms against the government.[4] Thus, the

---

4. Document 3 shows that the plaintiff's published writing advocates armed violence to advance revolution. Excised documents also include memorandum on Black Panther principals'

plaintiff's position can only be upheld if the burden of showing a law enforcement purpose requires proof of a specific violation. That argument has been rejected in *Ramo v. Department of Navy*, 487 F.Supp. 127, 130–131 (N.D.Cal.1979), and this court agrees with the ruling of the District Court of California. The court is mindful of the need to prevent the use of exemptions to defeat the congressional purpose of exposing FBI overreaching. There is some evidence that enforcement of internal security laws against the plaintiff was unlikely. In one of the released documents the following statement appears:

> In _____ confidential sources familiar with the various phases of Atlanta New Left and Black Extremist activity have noted—that Friedman is not known to have participated in any Atlanta New Left or Black Extremist activities.

However, other documents do support the defendants under an appropriate, though admittedly lenient test of exemption (b)(7). The records indicate that the agency was "gathering information with the good faith belief that the subject may violate or has violated federal law" rather than "merely monitoring the subject for purposes unrelated to enforcement of federal law." *Lamont v. Department of Justice*, 475 F.Supp. 761 (S.D.N.Y.1979). Accordingly, the defendant is held to have established the requisite law enforcement purpose.[5] It is worthwhile to note that while this ruling does allow the FBI to delete certain information, it does not prevent the exposure of FBI practices.

■ Plaintiff has not offered any significant rebuttal on the (b)(7)(C) and (b)(7)(D) issues beyond the threshold "law enforcement purpose" question. The defendants contend that disclosure of the names withheld would constitute an unwarranted invasion of personal privacy of any person mentioned in the requested files. 120 Cong.Rec. S–9330 (daily ed. May 30, 1974) (Remarks of Senator Phillip Hart). The names are those of persons who appear in the plaintiff's file, but are not the main focus of that file or the investigation and those persons who are subjects of investigations in whose file plaintiff's name also appears. When names, identifying characteristics, personal information about witnesses, accomplices or conspirators have been deleted, courts have upheld the agency action. *See, e.g., Kuehnert v. F.B.I., supra* at 667. The plaintiff has not shown that the public's interest in knowing this information offsets the possible harm to individuals from disclosure. *See Ferri v. Bell, supra* at 1217. Nor has the plaintiff shown that disclosure of agents' names, federal agency officials' names, or names of local law enforcement officers would be of greater benefit than detriment to the public. Accordingly, the claimed (b)(7)(C) exemptions are valid.

■ The (b)(7)(D) exemption is meant to prevent the loss of cooperation from people who give information confidentially Legislative history indicates that it protects the identity of a source and information from that source which may lead to disclosure of identity. 120 Cong.Rec. S–19812 (Nov. 21, 1974) (Remarks of Senator Phillip Hart). The Second King Affidavit explains that the FBI received information from persons interviewed; information furnished by local law enforcement, and sources reporting information on a regular basis. Second King Affidavit, pp. 10–14. Deletions in the documents appear to be consistent with the proper application of the exemption. The exemption has been discussed and upheld

---

statements concerning armed revolution at Document 16, p. 4. A review of documents to see if there is substantiation for a claim of exemption is a procedure consistent with the Act and the role of the trial court. *See Stephenson v. I.R.S.*, 629 F.2d 1140, 1145 (5th Cir.1980).

**5.** The court need not decide whether to go so far as to directly follow the First Circuit's holding that investigatory records of law enforcement agencies (such as the FBI), are *inherently* records compiled for "law enforcement purposes." See *Irons v. Bell, supra*. The First Circuit points out that if the exemption were unavoidable for each piece of investigatory material not specifically related to a violation, then materials invading "personal privacy" would be released. 5 U.S.C. § 552(b)(7)(C).

before. *Shaver v. Bell*, 433 F.Supp. 438, 440 (N.D.Ga.1977). Accordingly, the claimed (b)(7)(D) exemptions are valid.

 With respect to plaintiff's plea for *in camera* inspection of documents, the court notes that where sufficient description of contested materials exist, the agency need not be put to further tests. *See Weissman v. C.I.A.*, 565 F.2d 692, 697 (D.C. Cir.1977). This court has before it the Second King Affidavit which discusses the reasons for exemptions, lists the files retrieved by descriptions, states what documents were released, details the exemptions claimed, and supplies copies of each excised document. Having examined such documents, this court holds that in camera review is not required.

In sum, this order addresses plaintiff's complaint regarding FOIA requests to Washington and the FBI field office in Boston. Undisputed facts allow the court to resolve this case. The court rules that the FBI's search policy was responsive to the request and complied with the FOIA. Further, the court rules that the agency appropriately applied the exemptions of 5 U.S.C. § 552(b). Accordingly, plaintiff's motion for summary judgment is DENIED, and defendants' motion for summary judgment is GRANTED.

## SUPPLEMENTAL ORDER OF COURT

This action is brought pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, as amended, to obtain public access to certain records or segregated portions of records on the plaintiff which the defendants have withheld from release to plaintiff. Plaintiff initially filed a request for documents under the FOIA with the Secret Service (Department of Treasury), Selective Service System, Department of Defense, Central Intelligence Agency ("CIA"), Department of Justice, and the Federal Bureau of Investigation ("FBI") on August 31, 1977. Following plaintiff's request to the FBI's Washington, D.C. office and Boston office, a substantial number of documents were released. However, some material was withheld by the Washington office in reliance on the exemptions contained in the FOIA, 5 U.S.C. § 552(b), specifically exemption 7, for law enforcement records.

Plaintiff then filed this lawsuit in 1978, covering his FOIA request for all documents pertaining to him in the Boston and Washington, D.C. offices of the FBI. Following the filing of a *Vaughn v. Rosen* Index, *see* 484 F.2d 820 (D.C.Cir.1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974) with supporting affidavits, the parties filed cross-motions for summary judgment. By Order of October 6, 1981, this court granted the defendants' motion for summary judgment, upholding the FBI's withholding of various documents or portions of documents as valid (b)(7)(C) and (b)(7)(D) exemptions. The plaintiff then moved for leave to amend the complaint to include FOIA requests from FBI field offices in Atlanta; Baltimore; Charlotte; Columbia, South Carolina; Detroit; Jackson, Mississippi; Pittsburgh and Savannah. Plaintiff's motion to amend was granted. Numerous documents were released to the plaintiff, however, portions of some of the records were excised. A *Vaughn v. Rosen* index was filed with respect to the subject documents, along with the affidavits of Douglass C. Ogden and Maurice C. Hurst, special agents for the FBI.

This matter is now before the court on:

1) Defendants' motion for a protective order;

2) plaintiff's motion to amend the complaint;

3) defendants' motion for summary judgment;

4) defendants' motion to dismiss all defendants other than the FBI;

5) plaintiff's motion for a continuance and other forms of relief; and

6) plaintiff's motion to strike the affidavits.

### Plaintiff's Motion to Amend the Complaint

Plaintiff moves the court for leave to amend the complaint to add the Internal

Revenue Service, Department of Treasury ("IRS") as a party defendant. Plaintiff claims that information was shared between the FBI and the IRS on plaintiff and his activities. Plaintiff contends that the documents produced in a FOIA lawsuit filed by the National Lawyers Guild in the Southern District of New York establish that at the time of his request, the IRS had certain documents in its files which plaintiff requested, but which the IRS denied having. The plaintiff claims that the documents were improperly withheld by the IRS. Defendant strongly opposes this motion.

 It is well settled law that a motion to amend a complaint is within the sound discretion of the district court. Such leave to amend should be liberally granted absent "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Foman v. Davis,* 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

 In the instant case, plaintiff has failed to show sufficient cause for the long delay in seeking leave to amend the complaint to add the IRS. Plaintiff's exhibits show that he knew that the FBI had sent documents to the IRS concerning him and his activities and that he was aware of his appeal rights in 1978 with respect to his request for documents from the IRS. Furthermore, this action is ripe for determination, and the court finds that amendment would unduly delay resolution of the issues in this case. Moreover, it appears that plaintiff is not precluded from filing a separate lawsuit against the IRS. For the above-stated reasons, plaintiff's motion for leave to amend the complaint is **DENIED.**

1. Fed.R.Civ.P. 56(e) provides in pertinent part:
 Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.

## Plaintiff's Motion to Strike the Affidavits

 Plaintiff has moved to strike the affidavits of Maurice C. Hurst and Douglass C. Ogden for failure to comply with the requirements of Fed.R.Civ.P. 56(e).[1] The affidavits are relied upon by defendants in their motion for summary judgment. Specifically, plaintiff contends that the affidavit of Maurice Hurst, which pertains to the (b)(1) national security exemption claim under 5 U.S.C. § 552(b)(1), should be stricken because: 1) there are no factual allegations in the affidavit with respect to the individual processing of the claims, but only conclusory statements of law; 2) the Hurst affidavit, on its face, raises substantial and material questions of fact with respect to the processing of documents for which a (b)(1) exemption was made;[2] and 3) the affidavit fails to set forth factual allegations within Hurst's personal knowledge showing the harm resulting from the disclosure of the classified information.

With respect to the affidavit of Douglas C. Ogden, which pertains to exemptions under 5 U.S.C. § 552(b)(7)(C) and (b)(7)(D), plaintiff claims that this affidavit should be stricken because it fails to establish, as a factual matter, that assurances of confidentiality were provided for in each instance.

While it appears that plaintiff may have raised some meritorious arguments in support of his motion to strike the affidavits, the court finds said motion to be inappropriate in a FOIA case. Rather, if the court finds that these affidavits are insufficient for a responsible *de novo* determination of the defendants' classification decision, the appropriate procedure is to order supplementation of the affidavits or *in camera*

2. Plaintiff specifically refers to the fact that the four documents which defendants claim are exempted under (b)(1) were not classified until approximately ten years after they were originally generated, and were not classified until more than two years after plaintiff's FOIA request.

inspection of the disputed documents. *See Lesar v. United States Department of Justice*, 636 F.2d 472 (D.C.Cir.1980); *Founding Church of Scientology v. National Security Agency*, 610 F.2d 824, 833 (D.C.Cir.1979); *Diamond v. Federal Bureau of Investigation*, 532 F.Supp. 216 (S.D.N.Y.1981), *aff'd*, 707 F.2d 75 (2nd Cir. 1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 995, 79 L.Ed.2d 228 (1984).

For the foregoing reasons, the plaintiff's motion to strike the affidavits is **DENIED.** However, the court will consider the arguments raised by the plaintiff in this motion when considering and reviewing the affidavits in connection with the defendants' motion for summary judgment.

### Plaintiff's Motion for Continuance and to Order Defendants to Respond to Discovery and Defendants' Motion Requesting a Protective Order

Plaintiff moves the court to grant a continuance and for an order requiring defendants to respond to discovery. Defendants urge this court to enter a protective order.

Pursuant to Fed.R.Civ.P. 56(f), plaintiff argues for a continuance until the defendant answers discovery. Plaintiff alleges that the discovery requested is necessary to address defendants' motion for summary judgment. Furthermore, plaintiff requests reasonable time to conduct subsequent discovery.

In opposing the motion, defendants argue that the agency affidavits are the focus of the court's determination for summary judgment in FOIA cases. If the court should find the affidavits have defects, defendants contend that the agency should be permitted to supplement the existing ones or submit new affidavits. Defendants claim this is consistent with Fed. R.Civ.P. 56(e). However, if the court finds that the affidavits are not satisfactory, defendants urge that the court follow the *Stephenson v. Internal Revenue Service*, 629 F.2d 1140 (5th Cir.1980), mechanism. In addition, defendants move the court to grant a protective order.

In FOIA cases, discovery is appropriate; however, such discovery is limited to factual disputes. Such factual disputes include whether the agency engaged in a good faith search for all materials, whether the agency indexed all documents, and whether the agency did, in fact, classify the documents it seeks to withhold based on exemptions (b)(1) and (b)(7).

In FOIA cases, discovery is a question of fact which must be determined from the agency's affidavit. If government affidavits in FOIA cases satisfy the court that the search was adequate and complete, the court may deny discovery. However, if the record demonstrates the presence of a factual dispute, discovery may ensue. *See Murphy v. FBI*, 490 F.Supp. 1134 (D.C.Cir.1980).

Discovery in FOIA actions is limited to determining whether complete disclosure has been made. In this form, discovery is used to find whether withheld items are exempt from disclosure or whether a thorough search for documents has taken place. Under the FOIA, the district court has jurisdiction to order the production of improperly withheld agency records. *See Giza v. Secretary of Health, Education and Welfare*, 628 F.2d 748 (1st Cir. 1980).

On the issue of granting a continuance, the court finds that the affidavits submitted by the defendants satisfy the requirements for adequacy and completeness in FOIA cases. The affidavit of Douglass C. Ogden specifically documents the scope and methods undertaken for the search. Likewise, the affidavit of Maurice C. Hurst clearly sets out the basis for the security indexing and classification process of materials requested by the plaintiff and withheld by the agency. Based on the affidavits, the court finds that there is no factual dispute, and discovery may be properly denied.

For the reasons hereinstated, plaintiff's motions requesting a continuance and to order defendants to respond to discovery are hereby **DENIED.** Furthermore, de-

fendants' motion requesting a protective order is hereby **GRANTED.**

### Defendants' Motion to Dismiss Defendants Other Than The FBI

On December 12, 1982, defendants filed a motion requesting that the court dismiss all named defendants other than the FBI. The defendants contend that the FBI is the only proper party defendant. Plaintiff opposes said motion arguing that emerging case law permits suit against both agencies and their department heads in FOIA cases.

Under 5 U.S.C. § 552(e), the term "agency" is defined by reference to § 551. Under that provision, no mention is made of naming specific individuals as party defendants under § 552. By way of comparison, the Privacy Act, under 5 U.S.C. § 552(a)(4)(B), extends the subject matter jurisdiction of the district court to that agency controlling and withholding requested documents. The pertinent language of the Privacy Act clearly states that "the individual may bring a civil action against the agency."³ Taken as a whole, the jurisdictional coverage of both acts is aimed at agencies and not individuals.

As plaintiff has pointed out, several decisions have construed the language of the act to cover suit against agency department heads. *See Hamlin v. Kelley,* 433 F.Supp. 180 (N.D.Ill.1977); *Varona Pacheco v. Federal Bureau of Investigation,* 456 F.Supp. 1024 (D.C.P.R.1978). This line of decision also clearly holds a former Attorney General is not a proper party defendant in FOIA cases. *See Hamlin v. Kelley, supra.*

 However, the court finds that the language of the act clearly states that only an agency may be sued and the court has no jurisdiction over individual department heads. Developing case law supports this view. *See Ott v. Levi,* 419 F.Supp. 750 (E.D.Mo.1976); *OKC Corporation v. Williams,* 461 F.Supp. 540 (D.C.Tex.1978), *aff'd,* 5th Cir., 614 F.2d 58, *rehearing denied,* 617 F.2d 1207, *cert. denied,* 449 U.S. 952, 101 S.Ct. 357, 66 L.Ed.2d 216 (1980); *Gary Energy Corp. v. Department of Energy,* 89 F.R.D. 675 (D.C.Co.1981); *Weberman v. National Security Agency,* 490 F.Supp. 9 (D.C.N.Y.1980), *remanded,* 646 F.2d 563 (2nd Cir.), *aff'd,* 668 F.2d 676 (2nd Cir.1982); *Savarese v. Califano,* C.A. No. C78–243A (N.D.Ga.1979); *Providence Journal Co. v. Federal Bureau of Investigation,* 460 F.Supp. 778 (D.C.R.I.), *reversed on other grounds,* 602 F.2d 1010 (1st Cir.), *cert. denied,* 444 U.S. 1071, 100 S.Ct. 1015, 62 L.Ed.2d 752 (1980).

For the above-stated reasons, defendants' motion to dismiss defendants other than the FBI is hereby **GRANTED.** Accordingly, the proper party defendant to the instant action is the FBI, the remaining agency named in the complaint.

### Defendants' Motion for Summary Judgment

Defendants filed a motion for summary judgment on November 23, 1982. In support of the motion, defendant submitted affidavits filed on August 17, 1982, in conjunction with the *Vaughn v. Rosen* index. The affidavit of Douglass C. Ogden sets out the factual basis for the agency's decision to excise information from documents under the § 552(b)(7) exemption.⁴ Likewise, the affidavit of Maurice C. Hurst sets out the factual basis for the agency's determination to delete portions of documents under the (b)(1) exemption.⁵

At this time, the court will consider the arguments advanced by plaintiff under the motion to strike the affidavits.

---

**3.** 5 U.S.C. § 552a(g)(1) (1977).

**4.** Under 5 U.S.C. § 552(b), agency records are exempt from disclosure if they are:

(1)(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (b) are in fact properly classified pursuant to such Executive order;

. . . . .

**5.** Under 5 U.S.C. § 552(b), agency records are exempt from disclosure if they are:

(7) investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would....
(B) Deprive a person of a right to a fair trial or an impartial adjudication, (C) constitute an unwarranted invasion of personal privacy....

The contentions of both parties are clear and simple. Defendants contend that the FOIA exemptions claimed were proper and that the supporting affidavits specifically enumerated the basis for the agency's decision to withhold the documents. With respect to the exemptions, plaintiff argues that the defendants have failed to satisfy the burden of showing that procedural and substantive requirements have been satisfied. Furthermore, the plaintiff challenges the factual information contained in the accompanying affidavits as failing to show that disclosure would entail an unwarranted invasion of personal privacy.

### 1. *The 5 U.S.C. § 552(b)(1) Exemption.*

The (b)(1) exemption is characterized as the national security exemption to the FOIA. This exemption protects against disclosure of matters that are "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1) (1976). Pursuant to the holding in *Lesar v. United States Department of Justice, supra,* the applicable Executive order is contained in Executive Order No. 12,065 (hereinafter "E.O. 12,065").

In pertinent part, E.O. 12,065 calls for information to be classified in one of three designations.

1–102 "Top secret" shall be applied only to information, the unauthorized disclosure of which reasonably could be expected to cause exceptionally grave damage to national security.

1–103 "Secret" shall be applied only to information the unauthorized disclosure of which reasonably could be expected to cause serious damage to the national security.

1–104 "Confidential" shall be applied to information the unauthorized disclosure of which could be expected to cause identifiable damage to the national security.

Furthermore, E.O. 12,065 states that information may not be so classified unless it covers one of seven categories, the focal classification being:

(g) other categories of information which are related to national security and which require protection against unauthorized disclosure as determined by the President or by a person designated by the President pursuant to Section 1–201, or by an agency head.

Exec.Order No. 12,065, § 1–301, 3 C.F.R. 190, 193 (1979).

 The statute clearly provides that the burden of proving proper classification is upon the FBI. The court will conduct a *de novo* review of the classification decision. The applicable standard of review used by the court is whether the information in question falls within the above-stated category and whether unauthorized disclosure of the requested material under the act could be reasonably expected to cause the requisite potential harm. *See Lesar v. Department of Justice, supra,* at 481, n. 46; *Hayden v. National Security Agency/Central Security Service,* 608 F.2d 1381, 1387 (D.C.Cir.1979), *cert. denied,* 446 U.S. 937, 100 S.Ct. 2156, 64 L.Ed.2d 790 (1980).

 Regarding the above-stated standard, the agency may carry the burden by submitting affidavits to the court that specifically set forth the nature of the documents questioned and the reason for their withholding. In reaching its determination, the district court is to afford "substantial weight" to the agency's affidavits. *See Hayden v. National Security Agency, supra; Weissman v. Central Intelligence Agency,* 565 F.2d 692, 697, n. 10 (D.C.Cir. 1977). This means that "if the affidavits contain information of reasonable detail, sufficient to place the documents within the exemption category, and if the information is not challenged by contrary evidence in the record or evidence of agency bad faith, then summary judgment for the government is appropriate without an *in camera* review of the documents." *See Lesar v. Department of Justice, supra.*

■ The four documents at issue received a security classification of "confidential" pursuant to E.O. 12,065. However, the documents received this classification almost ten years after origination. Under E.O. 12,065, § 1–606, the subject of belated classification is covered.

> No document originated on or after the effective date of this Order may be classified after an agency has received a request for the document under the Freedom of Information Act or the Mandatory Review provisions of this Order (Section 3–5), unless such classification is consistent with this Order and is authorized by the agency head or deputy agency head. Documents originated before the effective date of this Order and subject to such a request may not be classified unless such classification is consistent with this Order and is authorized by the senior official designated to oversee the agency information security program or by an official with Top Secret classification authority. Classification authority under this provision shall be exercised personally, on a document-by-document basis.

Exec.Order No. 12,065, § 1–606, 3 C.F.R. 190, 194–95 (1979). Documents that are later classified after an initial period of unclassified status will not be barred from later classification where the substantive standards of E.O. 12,065 are complied with. *See Halperin v. Department of State,* 565 F.2d 699 (D.C.Cir.1977); *Lesar v. Department of Justice, supra.* With respect to the procedural issue, the court finds that the affidavit of Maurice C. Hurst sets out the proper procedural mechanism that was followed.[6]

In classifying the excised documents "confidential," the Hurst affidavit states that disclosure of information covering intelligence activities, sources and methods, would result in "identifiable" damage to the national security.[7]

The substantive basis for the "confidential" classification covers the improper release of information relating to intelligence and counterintelligence collection methods and the injury to intelligence collection resulting from the disclosing of the identity of an intelligence source.[8]

While affording substantial weight to the defendants' affidavits, the court views the assertions contained therein as more conclusory than factual. The information at issue is contained in documents averaging thirteen years old. The government has only seen fit to classify the excised documents since 1980 and 1981.[9] Specifically, documents numbered 29 and 52 have been excised in their entirety rather than merely removing the portions containing "a singular identifier" for intelligence collection. Furthermore, the government alleges that "due to the uniqueness and recurrence of this information, a more detailed description could reasonably be expected to identify the source and result in identifiable damage as explained in paragraph 9 through 16." (See affidavit of Maurice C. Hurst, p. 22.) The government states no reason, other than those previously stated, for the substantial editing, and mainly relies on a bold assertion that the claim is reasonable. *See Diamond v. Federal Bureau of Investigation, supra* at 221.

■ Under § 552(a)(4)(B), *in camera* review of the excised documents is commanded to the discretion of the district

---

6. Affidavit of Maurice C. Hurst, p. 4, ¶ 5.

7. Affidavit of Maurice C. Hurst, p. 12, ¶ 9.

8. Hurst Affidavit, p. 14–15, ¶ 11 and ¶ 12.

9. A) Document number 29, dated April 28, 1971; this document was classified "confidential" on October 28, 1980. Hurst affidavit, p. 19.
B) Document number 30, dated June 29, 1971; this document was classified "confiden-

tial" on October 28, 1980. Hurst affidavit, p. 20.
C) Document number 34, dated September 29, 1971; this document was classified "confidential" on April 3, 1981. Hurst affidavit, p. 21.
D) Document number 52, no date of origination; this document was classified "confidential" on October 29, 1980. Hurst affidavit, p. 22.

court. Such discretion should be exercised with restraint. *See Lead Industries Association v. Occupational Health & Safety Administration,* 610 F.2d 70, 87 (2d Cir. 1979); *Cliff v. Internal Revenue Service,* 496 F.Supp. 568, 572 n. 9 (S.D.N.Y.1980). However, where the excised portions are inadequately described and insufficiently substantiated, *in camera* inspection is appropriate. *Ray v. Turner,* 587 F.2d 1187, 1194–95 (D.C.Cir.1978); *Lamont v. Department of Justice,* 475 F.Supp. 761, 770–73 (S.D.N.Y.1979).

For the reasons hereinstated, defendants are **ORDERED** to produce for *in camera* inspection documents numbers 29 and 52, within thirty (30) days from receipt of a copy of this Order. With respect to documents numbered 30 and 31, the defendants' motion for summary judgment on the (b)(1) exemption is hereby **GRANTED.**

2. *The (b)(7)(C) and (b)(7)(D) Exemption.*

Under 5 U.S.C. § 552(b)(7)(C) and (b)(7)(D), agency records are made exempt from disclosure if they are:

> (7) investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would ... (C) constitute an unwarranted invasion of personal privacy, (D) disclose the identify of a confidential source. . . .

With these two exemptions, the primary issue is whether the records exempted were compiled for "law enforcement purposes."

Exemption (b)(7)(C) exempts the disclosure of law enforcement records if disclosure would cause an unwarranted invasion of personal privacy. The focus of the (b)(7)(C) exemption is to protect the privacy of any person mentioned in investigative files including those persons not targeted by the investigation.

The (b)(7)(D) exemption protects the identity of a confidential source and confidential information furnished only by the confidential source. This exemption is also the basis for the government withholding the identities of state, local and foreign agencies that have provided information in confidence to the FBI. *See Baez v. United States,* 647 F.2d 1328, 1339 (D.C.Cir.1980), *en banc,* 684 F.2d 999 (D.C.Cir.1982).

Under these exemptions, defendants contend that summary judgment is appropriate because the records attached to the Ogden affidavit are clearly ones dealing with law enforcement. The records were compiled: (1) to investigate acts which are illegal and which can result in criminal or civil sanctions; (2) to ascertain the identity and actions of those committing the acts; and (3) to ascertain the identity and actions of those aiding and abetting, or conspiring with such actors. *See Rural Housing Alliance v. Department of Agriculture,* 498 F.2d 73 (D.C.Cir.1974), *rehearing denied,* 502 F.2d 1179 (D.C.Cir.1974). Specifically, defendants claim that those excluded records were compiled through investigations for the violation of federal criminal statutes.[10]

The defendants also argue that the exemption of information is proper where it is necessary to protect intelligence sources and information networks. By way of affidavit, defendants claim that the FBI received: (1) information from persons interviewed; (2) information furnished by local law enforcement agencies; (3) information from sources reporting on a regular basis; and (4) information from commercial sources.[11] Defendants argue that it is crucial for an investigative organization to be able to obtain information from confidential sources and it is necessary that these sources remain confidential to insure a continual stream of information.

---

**10.** 18 U.S.C. § 2 (Principals-Commands or Induces Offense Against the United States); 18 U.S.C. § 231 (Civil Disorders); 18 U.S.C. § 371 (Conspiracy); 18 U.S.C. § 2101 (Antiriot); 18 U.S.C. § 2383 (Rebellion or Insurrection); 18 U.S.C. § 2384 (Seditious Conspiracy); and 18 U.S.C. § 2385 (Advocating the Overthrow of the Government). Affidavit of Douglass C. Ogden, p. 4, ¶ 7.

**11.** Ogden affidavit, pp. 9–12.

Plaintiff argues that summary judgment is inappropriate because the defendants have completely failed to satisfy their burden under Fed.R.Civ.P. 56(e). Plaintiff charges that the Ogden affidavit does not affirmatively show that under the (7)(D) exemption, promises of confidentiality were ever extended to agency sources. Furthermore, plaintiff claims that the Ogden affidavit does not establish the requisite factual balancing of privacy interests under the (7)(C) exemption. Under this exemption, plaintiff argues that the defendants have relied on a per se rule of exclusion rather than identifying the public and private interests relating to each document.

The exemptions under (b)(7)(C) and (b)(7)(D) require that the defendants carry the burden of proof of establishing that exemptions are proper, and the district court's ruling on a claim of exemption must not rely solely upon an affidavit to determine the factual basis for the exemption. *See Irons v. Bell,* 596 F.2d 468 (1st Cir. 1979). In support of the motion, defendants are not required to show that records were compiled concerning a specific violation of law by the plaintiff. *See Ramo v. Department of Navy,* 487 F.Supp. 127 (N.D.Cal.1979). Proof can be established by court review of the excised documents. *See Kuehnert v. FBI,* 620 F.2d 662, 666 (8th Cir.1980). However, files reviewed in the instant case show the FBI was "gathering information with the good faith belief that the subject may violate or has violated federal law" rather than "merely monitoring the subject for purposes unrelated to enforcement of federal law." *Lamont v. Department of Justice, supra* at 770. For the above-stated reasons, the court finds that the defendants have shown that the records were compiled for law enforcement purposes.

Plaintiff argues that defendants have not shown the required balancing of privacy interests under (7)(C). The challenged dele-

tions cover the names and other unique personal information of witnesses, accomplices or parties that appear in files pertaining to the plaintiff. The courts have upheld the deletion of such information where no showing has been offered that disclosure would serve the public interest. *See L & C Marine, Ltd. v. United States,* 740 F.2d 919 (11th Cir.1984); *Kuehnert v. FBI, supra* at 667.

However, defendants' affidavit has clearly outlined how the disclosure of deleted information would cause both possible harm to individuals named and to agency information sources.[12] Likewise, plaintiff has not shown that disclosure of agents' names, federal agency officials' names, or names of local law enforcement officers would be more beneficial than detrimental to the public interest.[13] The court finds that the defendants' reliance on the (b)(7)(C) exemption is valid.

The (b)(7)(D) exemption covers not only the privacy of the information source, but also the confidentiality of the information offered. *Varona Pacheco v. FBI, supra* at 1032. For purposes of the (b)(7)(D) exemption, the confidentiality of the source or the information offered can be assured either explicitly or implicitly by the agency. *See Varona Pacheco v. FBI, supra; Mobile Oil Corp. v. Federal Trade Commission,* 430 F.Supp. 849 (S.D.N.Y.1977).

Plaintiff argues that defendants have not made an affirmative factual showing that promises of confidentiality were made as required under the exemption. However, a review of some of the challenged files and reference to the Ogden affidavit show otherwise. The Ogden affidavit explains under what circumstances the FBI received information from witnesses, local law enforcement agencies and sources reporting on a regular basis.[14] The examined deletions and defendants' factual basis for the exemptions appear to show that (b)(7)(D) has been properly ap-

**12.** Ogden affidavit, pp. 8–10, ¶ B, B(i).

**13.** Ogden affidavit, pp. 10–12, ¶ B(ii), ¶ B(iii) and ¶ B(iv).

**14.** *Id.*

plied. *See Shaver v. Bell,* 433 F.Supp. 438, 441 (N.D.Ga.1977). Based on the reasoning hereinstated, the court finds that the defendants have shown an adequate factual basis for the (b)(7)(D) exemption.

### Procedural Requirements

Central to plaintiff's motion to strike defendants' affidavits is the contention that inadequate search procedures were utilized by the agency. Plaintiff claims that the Ogden affidavit fails to specifically set out the agency's attempt to locate and identify the documents either concerning the plaintiff directly or citing his name. Defendants claim that *in camera* inspection should not be ordered unless the defendants have clearly failed to demonstrate by affidavit that the exemptions and procedures used were proper.

The Ogden affidavit states the search procedures followed by the agency with some specificity and includes a list of where the documents were found and in what number. By Order of this court dated October 6, 1981, summary judgment was granted for the defendants pursuant to the factual allegations in the agency's second affidavit of Edward King. The King affidavit, like the Ogden affidavit, covers the procedural basis and the adequacy of the document search. A review of both affidavits show a similarity in the description of procedures and the search methods utilized.

In *Weissman v. CIA, supra,* the Court of Appeals determined that *in camera* review of the challenged documents is unnecessary where the agency has sufficiently described the appropriate procedures and basis for the exceptions. The court views the agency's description of the search policy, as compared to the plaintiff's requests, as being proper and thorough. Having also examined some of the documents in question with the facts set out in the Ogden affidavit, the court finds that an *in camera* review of the documents is unnecessary.

### CONCLUSION

For the above-stated reasons, the court **ORDERS** that the defendants' motion for summary judgment on the (b)(7)(C) and the (b)(7)(D) exemptions to the FOIA is hereby **GRANTED.**